**BLUE DIAMOND COAL COMPANY, Appellant,**

**v.**

**William C. TERRY and Workmen's Compensation Board of Kentucky, Appellees.**

Court of Appeals of Kentucky.

June 16, 1967.

Richard D. Cooper, Reeves, Barret, Cooper & Ward, Hazard, for appellant.

Eugene Goss, Harlan, for appellees.

STEINFELD, Judge.

This is an appeal from the judgment of the Perry Circuit Court which affirmed an award of the Workmen's Compensation Board in favor of William C. Terry.

Terry was employed by the Blue Diamond Coal Company from the 12th day of August, 1946, until May 15, 1961. He had been employed by others in coal mines from 1921 to 1941 and outside the coal industry from 1941 to 1946. He ceased his employment with Blue Diamond Coal Company on May 15, 1961, giving as his reason the fact that he could climb but few steps without being required to stop to rest. He said he wasn't able to continue working on the inside of the mine. While testifying before the Board he admitted that he had heard of other people becoming afflicted with silicosis or rock dust from working in mines and he knew at the time that he ceased his employment that he was having lung trouble. While in the hospital in February 1960, Terry's occupational disease of pneumoconiosis was first diagnosed. Subsequently, he was admitted to the hospital on 23 different times from the date on which he terminated his employment up to the date of hearing before the Board. He was treated by Dr. Henry Evans who testified that he did not know whether or not he advised Terry of the nature of the illness.

A hospital record dated February 15, 1963, showed that Terry was then suffering from pneumoconiosis. An x-ray examination made on June 10, 1964, revealed evidence of emphysema, pulmonary fibrosis and pneumoconiosis. Terry contends and the Workmen's Compensation Board found that he was not aware that he had silicosis before August 30, 1965, when his attorney so advised him.

Terry filed his application for adjustment of claim with the Workmen's Compensation Board on August 30, 1965, in which he alleged that he became affected by the occupational disease on the 15th day of May, 1961. After hearing evidence the Board awarded Terry $36.00 per week for the period of 425 weeks commencing on the 15th day of May, 1961. In its findings of fact it stated that Terry first learned of the occupational disease on the 30th day of August, 1965, and that he gave notice to his employer on the 15th day of September, 1965, that he was suffering from silicosis.

It is contended that Terry had failed to give notice of disability within the time required by KRS 342.316(2) which provided " * * * that notice of claim shall be given to the employer as soon as practicable after the employe first experiences a distinct manifestation of an occupational disease in the form of symptoms reasonably sufficient to apprise him that he had contracted such disease, or a diagnosis of such disease is first communicated to him, whichever shall first occur" and that the claim is barred by the limitation of KRS 342.316(3). The employer appealed to the Perry Circuit Court. It affirmed the Board, hence this appeal.

The employer urges that Terry was informed and knew or should have known of the occupational disease in June 1964. It bases this contention on testimony of Dr.

Ivey who was asked and answered as follows:

"Q. What was your diagnosis of those X-ray examinations?

A. There was evidence of emphysema, pulmonary fibrosis and pneumoconiosis.

Q. When you made this diagnosis of him on June 10, 1964, did you relate this to Mr. Terry?

A. Yes sir.

Q. Did you tell Mr. Terry at the time that he had pneumoconiosis?

A. Yes sir. Well, let's say I don't remember the specific date on which I told him, I made him aware of the changes.

Q. This was in the year 1964 that you told him that?

A. Yes sir.

\* \* \* \* \* \*

Q. Do you know what date it was when you told the plaintiff that he had pneumoconiosis?

A. No sir, I don't know the specific date.

Q. Could you estimate when it was?

A. In June of '64.

\* \* \* \* \* \*

Q. Was he in the hospital at that time when you told him that?

A. Yes sir.

Q. Do you recall the specific occasion when that was?

A. Well roughly, I mean I remember in general, for example, I remember the —uh—just the general circumstances. Of course—now this has been almost two years ago, but I remember the occasions when I would talk with Mr. Terry and when I treated him and I remember when he had this convulsive seizure. I didn't see him Dr. Callis saw him and admitted him and then I saw him. I remember Dr. Callis telling me about him and I remember he almost died during this convulsive seizure, it was very nearly fatal. In fact his wife thought he had died. And I remember, in general, the rooms he occupied when he was in the hospital. But as far as pinpointing the date, I can't.

Q. You have no vivid recollection then of the occasion when you told him that?

A. No, I have a vague recollection.

Q. Do you know who was present at that time?

A. No sir, I don't.

Q. Doctor would you relate exactly the words that you used when you advised him of that?

A. Well, if I can't remember the specific date I am sure I can't remember the exact words, but I—we are all creatures of habit and I know approximately what I told him, but there is—uh—this —uh—this would be the way that I would explain the situation to him. Mr. Terry had asked me on occasions what was wrong with him, what his trouble was, as many patients do. And it is our practice to try to make them as fully aware of the situation as possible. We feel the patient should know what is wrong with them. And—uh—to the best of my knowledge, what I told him was that he had emphysema and scarring of his lungs with some pneumoconiosis."

Terry testified that the physicians who treated him never informed him that he had silicosis. He stated that no doctor, including Dr. Ivey, ever told him that he "had lung trouble which was related in any way to work in the coal mines". He told the Board that he did not know the meaning of the word pneumoconiosis and even if Dr. Ivey used that word he did not know what he was talking about.

The employer cites Brock v. International Harvester Company, Ky., 374 S.W.2d 507 and Good v. Russell Fork Coal Company, Ky., 387 S.W.2d 842. In Brock we held that the claim was filed in time. Good v. Russell, supra, affirmed the finding by the Board that the employee knew he had silicosis but failed to assert his rights within the statutory limitation.

We said in Peabody Coal Company v. Harp, Ky., 351 S.W.2d 170, that notice under KRS 342.316(2) was " * * * not required to be given until these conditions concur: (1) The employee has a disability from an occupational disease which impairs his capacity to perform his work, and (2) the employee knows or should know by the exercise of reasonable care and diligence that he is suffering from the disease." The rule was reaffirmed in Tunstall v. Blue Diamond Coal Company et al., Ky., 359 S.W.2d 614.

Bartley v. Bartley, Ky., 274 S.W.2d 48, held that statutes regarding giving of notice " * * * should be liberally construed in favor of the employee to effectuate the beneficient purposes of the Compensation Act."

 It was for the Board and not the court to determine whether Terry knew, or should have known that he had contracted an occupational disease. Lowery v. Blue Diamond Coal Company et al., Ky., 354 S.W.2d 499. It is our opinion that the Board had sufficient evidence before it to support its conclusion that Terry did not know he had an occupational disease. Having so decided the notice to the company complied with the provisions of the statutes in question. Lewallen et al. v. Peabody Coal Company, Ky., 306 S.W.2d 262; Peabody Coal Company v. Harp, supra.

The judgment is affirmed.

WILLIAMS, C. J., and HILL, MILLIKEN, OSBORNE, and PALMORE, JJ., concur.